CALEB B. REEVE ET AL. v. JOHN A. ELMENDORF.

1. An action at law can, under proper conditions, be maintained against the owner of a building by a laborer, journeyman, or materialman, upon a notice served according to the 3d section of the mechanics' lien law, to recover the amount claimed in the notice and due the person who serves such notice, from the contractor.
2. An action cannot be maintained, under the 3d section, against the owner, upon a notice, when the owner has reasonable cause to dispute the claim of the person serving the notice.
3. When the debt claimed by the workman or materialman is disputed, the only course for such claimant is to verify it by a judgment against the contractor.
4. If, by the terms of a contract, the owner has the right to retain the moneys earned until the completion of the building, and then to make deductions from such sum on account of the delay of the work, such right will be of equal avail, whether the suit is at common law by the contractor, or under the statute by the workman or materialman.
5. The mere disallowance by a contractor of the claim of a sub-contractor will not prevent a suit against the owner by the sub-contractor, on a notice served by the sub-contractor, claiming on a *quantum meruit* for work and materials.
6. A claim by the workman or materialman for more than has, in fact, been earned by him, is fatal to his right to use the statutory procedure against the owner.

In case, on mechanics' lien. On case certified from the Union County Circuit Court.

Argued at June Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiffs, *E. S. Atwater.*

For the defendant, *F. Bergen* and *W. J. Magie.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is one of four cases of
the same sort, which have been sent from the Circuit Court
of the county of Union, asking, with respect to several par-
ticulars, the advisory opinion of this court.   These suits are
all founded on the 3d section of the mechanics' lien law, and
it is the meaning and legal effect of that section which have
occasioned embarrassment.   The points thus raised will be
disposed of in the order in which they stand in the judicial
certificate now before us.

*First.* " Can an action at law be maintained against the
owner of a building by a laborer, journeyman, or material-
man, upon a notice served according to the 3d section of the
mechanics' lien law, to recover the amount claimed in the
notice, and due to the person who serves such notice, from
the contractor ?"

Since the propounding of this inquiry the question has
been considered by the Court of Errors and Appeals, in the
case of *Craig* v. *Smith,* in the Term of March last, a case
which is now reported in *8th Vroom* 549.   That was an
action by a materialman against the owner of the building.
The declaration stated that the building in question had been
put up under a contract duly filed ; that the plaintiff had
furnished materials ; had demanded payment of the con-
tractor, which being refused, he had given the requisite notice
of such non-payment to the defendant, and that the defend-
ant was satisfied of the correctness of the plaintiff's demand.
These facts were admitted, and the defence interposed was,
that before such notice to the defendant the contractor had
made a general assignment of his property for the benefit of
his creditors.   The decision was, that in order to entitle the
materialman to his action against the owner, there must be a
debt due from the owner to the contractor at the time the

latter gives the owner notice of his claim. The result, there-fore, was adverse to the plaintiff in that suit, inasmuch as, before the giving of such notice, the debt due from the owner had become vested in the assignee of the contractor. The counsel of the defendants, in the present case, insists, in his brief, that the right of the workman or materialman to sue under this 3d section of the mechanics' lien law, was not involved, and was not, consequently, decided in this case just cited. But this inference is utterly inadmissible. The very opposite of this is implicit in the case. By deciding that the action of the materialman was cut off and defeated by the assignment, there was a tacit admission that, but for such act, the action would have lain.

If, under no conditions, the plaintiff's suit could be main-tained against the owner, it was quite an unprofitable inquiry whether, under the particular grounds then apparent, his claim was to be validated or defeated. In point of fact, the question whether an action would lie in favor of the workman and materialman, was considered, and decided in this case, by the Court of Errors, and such decision was, as is clearly indicated in the opinion read, that such action, under proper conditions, could be maintained.

*Second.* "Can an action at law be maintained under the third section of the mechanics' lien law against the owner, upon a notice, when the owner has a reasonable cause to dis-pute the claim of the person giving the notice?"

This interrogatory must, I think, be answered in the nega-tive. The substantial provisions of this section are these : That when the contractor refuses to pay the moneys due for materials or wages, the materialman or workman may give notice of such non-payment to the owner, and of the amount due to him and so demanded, and thereupon the owner is authorized to retain the amount so due and claimed, out of the amount owing by him to the contractor ; the owner is then required to give notice in writing to the contractor of this demand made upon him. The section, referring to the claim thus made, says : "And if the same be not paid or

settled by said master-workman or contractor, such owner or owners, on being satisfied of the correctness of such demand, shall pay the same, and the receipt of such journeyman," &c.

It has already been said that the law is settled by the court of last resort that, by force of this section, an action may accrue to the materialman or workman against the owner of the building. Two duties are imposed by this section on the owner of the building : one is that, on receiving notice in writing that a certain sum is due to the materialman or workman which the contractor has refused to pay, to retain such amount in his hands ; and the second is, to pay such amount so claimed, to the materialman or workman, " upon being satisfied of the correctness of such demand." It is thus apparent that the duty to make payment is not an absolute, but is a qualified one. The statute does not direct him to pay the materialman or workman upon the mere receipt of a notice that a certain amount is claimed, and payment of which has been refused. Such a provision would have been impolitic in the highest degree; it would have put the contractor at the mercy of the persons with whom he dealt, and would have led to much wrong and injustice. But, on the contrary, a payment is not authorized unless the owner is satisfied of the correctness of the demand. And this restriction of the right to pay, is intended to guard, in some measure, the rights of the contractor ; for I think it throws a duty on the owner in his favor. In behalf of the contractor, the owner is bound to exercise an honest judgment in the determination of the question whether the demand is correct. It seems to me that if the owner should be notified, or should have reason to believe that the claim was disputed by the contractor, it would not be safe for him to pay such claim, unless on a settlement between himself and the contractor he should be prepared to show that the money paid was justly due. The position of a discreet owner is not, as has been intimated, a dangerous one ; in truth, he is open to no hazard of loss, unless from his own perversity or negligence. In view of the just rights of the contractor, as the owner is obliged to be satisfied of the cor-

rectness of the claim of the materialman or workman, before he pays it, it follows that neither of the latter can sue the owner, without first establishing, to the exclusion of all reasonable doubt, the justness of his claim. The statutory direction to the owner is, to pay upon being satisfied of the correctness of the demand. I do not understand from this, that an unfounded and captious dissatisfaction would exonerate the owner from the liability to a suit. It may well be that, under certain conditions, the law would justify an inference that the owner was satisfied, even in opposition to an expressed dissent on his part. Thus, if the workman should obtain a judgment for the sum claimed against the contractor, or the contractor should admit the justness of the claim, the declaration of the owner that he was not satisfied, would, probably, be of no avail, as, under such circumstances, the inevitable conclusion would be that, in point of truth, he was satisfied, and that his disavowals were fraudulent. But, so long as an honest, which is the same thing as a reasonable dissatisfaction, exists on the part of the owner, with respect to the fairness of the debt claimed, he is not suable under this clause. It is one of the fundamentals of the claimant's action, that the owner is satisfied of the correctness of his demand; and such fact must be averred in the declaration and proved on the trial under the general issue. Upon these principles it is, therefore, clear that if the owner has reasonable cause to dispute the claim made upon him, an action brought against him must fall to the ground. Where the debt claimed by the workman or materialman is disputed, the only course for such claimant is to verify it by a judgment against the contractor.

*Third.* " Can a judgment be rendered in a suit against an owner on a notice served according to the terms of the third section of the mechanics' lien law, for a less amount than is demanded in such notice ? "

This interrogatory will be hereafter considered and disposed of in connection with the one marked as number eight.

The next two questions appear to involve the same principle, and will, consequently, be considered together.

*Fourth.* In a case where a contractor has agreed to complete a building by a certain day named in the contract, and has further agreed that a specified sum shall be forfeited and paid for each and every day that such building shall remain uncompleted after the day named, to be deducted from the contract price, can a notice served *after* the day when the building should have been completed operate as a primary lien upon any money in the hands of the owner which had been earned by the contractor previous to the time of the service of such notice, it not appearing that a payment was due to the contractor from the owner, and the building being uncompleted at the time of the service of said notice?

*Fifth.* When a *per diem* payment to be deducted from the contract price for completing a building has begun to run against the contractor, is the owner liable, under the third section of the mechanics' lien law to any laborer, journeyman or materialman for work or materials for such building until it is actually completed?

The statement of the general principle, that the statutory section in question does not at all modify the contract between the contractor and the owner, except in the one particular that it authorized certain portions of the money earned to be paid to the workmen and materialmen, appears to afford an answer to the questions here propounded. The owner cannot be compelled to pay to the workman or materialman any moneys which, by force of his contract, he was not compellable to pay to the contractor. Upon notice given, the workman or materialman, to the extent of his demand, takes the place of the contractor, so that, if the owner, as against the latter, can withhold the payment of the moneys earned, he can do so, in like manner, against the demands of the former. The test is, whether a suit for the money in question will lie by the contractor against the owner. If it will not, the owner is not liable to a suit by the workman or materialman. The result therefore is, that if, by the terms of the contract in this case, the owner had the right to retain the moneys earned until the completion of the building, and then to make deduc-

Reeve v. Elmendorf.

tion from such sum on account of the delay in the doing of the work, such right will be of equal avail, whether the suit is at common law by the contractor, or under the statute by the workman or materialman.

*Sixth.* Can a laborer, journeyman or materialman recover from an owner, when at the time of notice the contractor had done work, &c., which, if there were no contract, would have entitled him on a *quantum meruit* to as much as the payments named in the contract, but had not done the *specific* work which by the contract entitled him to any payment under the contract, and the contractor, at the time of the notice, having failed to complete the building within the time mentioned in the contract; and the owner afterwards having completed it pursuant to the contract, and upon such completion there remains a balance in the hands of the owner, which payments made by the owner on orders from the contractor after the notice and the *per diem* deduction provided in the contract will more than exhaust?

An answer to this is to be found in the next preceding resolution. The criterion is whether the contractor, under the circumstances stated, could sue for the moneys demanded, and that question would obviously depend on the force of the contract between the owner and contractor.

*Seventh.* Can a sub-contractor, having been discharged by the original contractor, who claimed that the sub-contractor had failed to complete his sub-contract according to its terms, (which was disputed,) after partially performing his contract and receiving part pay, maintain an action against the owner on a notice served by the sub-contractor on the owner claiming on a *quantum meruit* for work and materials furnished, which claim is disputed by the original contractor?

There is not perceived any reason why such a suit will not lie, provided the claimant can satisfy the owner, before action brought, of the correctness of his demand. It is not probable that the owner will be so satisfied as long as the contractor disputes the debt; but the mere disallowance of the contractor will not prevent a suit against the owner.

*Eighth.* When a sub-contract has been made to do certain work on a building, no time of payment being fixed, can the sub-contractor, after performing part of his work, serve a notice on the owner to retain the whole of his sub-contract price, and after substantially performing his work, bring an action on such notice to recover the whole of his contract price or any part of it, he having, before suit commenced, obtained an order from the contractor, directing the owner to pay him a certain amount, which is less than the sum demanded in the notice?

Such an action will not lie unless, by the terms of the sub-contract, the money for the whole work is due in advance. The reason is, that before the workman or subcontractor can notify the owner of his claim, he must put his employer in fault. The statute says, that when the contractor shall, upon demand, refuse to pay the wages due, the owner may be notified. Now, therefore, until the contractor has refused to pay what is justly due and in arrear, the statutory remedy is not applicable. So that if in the case presented above, the whole money was due by force of the terms of the sub-contract, as a prepayment before the doing of the work, and the payment of such money was refused by the contractor, the statutory juncture would be presented, and a resort to the owner would be justifiable. But there could be no recovery of a lesser sum than the amount demanded of the contractor, because the finding that such lesser sum was the debt really due, would, *per se,* demonstrably show that the contractor was not in fault in refusing to pay the demand made upon him. His obligation is to pay the wages due, and if more than such are demanded, he has a right to refuse to pay such claim. It is reasonable to require the materialman or workman, to be certain that the claim he makes is, in all respects, correct, before he proceeds to impound moneys in the hands of the owner, and to interrupt the due execution of the building contract. A privilege to make exorbitant and ill-founded claims, and on a refusal of payment, to intercept such sums, and hold them in the hands of the owner

an indefinite time, would be simply an instrument of vexation and oppression. The statute says the workman or materialman shall give notice of the contractor's refusal to make payment, "and of the amount due to him or them, and so demanded," and it proceeds to authorize the owner thereupon to retain " the amount so due and claimed ;" obviously, then, the amount demanded must be the amount due. As the amount claimed is to be retained by the owner, it would be a sheer injustice to allow more to be claimed than is justly due. If the workman or materialman claim, therefore, more than has in fact been earned by him, such exaggeration is, I think, fatal to his right to use the statutory procedure against the owner.